IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| AILEEN MARIANO, | ) | CIVIL NO. 11-00652 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIBERTY DIALYSIS-HAWAII, LLC | ) | |
| dba LIBERTY DIALYSIS; JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; | ) | |
| DOE CORPORATIONS 1-10; and | ) | |
| DOE ENTITIES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Liberty Dialysis –
Hawaii, LLC doing business as Liberty Dialysis' ("Liberty
Dialysis" or "Defendant") Motion for Summary Judgment ("Motion"),
filed on September 27, 2012.  Plaintiff Aileen Mariano
("Plaintiff") filed her memorandum in opposition on December 27,
2012, and Defendant filed its reply on January 8, 2013.  This
matter came on for hearing on January 22, 2013.  Appearing on
behalf of Defendant were Barry Marr, Esq., and Megumi Sakae,
Esq., and appearing on behalf of Plaintiff were Scot Stuart
Brower, Esq., and David Mikonczyk, Esq.  After careful
consideration of the Motion, supporting and opposing memoranda,
and the relevant legal authority, Defendant's Motion is HEREBY
GRANTED for the reasons set forth below.

**BACKGROUND**

Plaintiff filed a Third Amended Complaint ("Complaint") in the First Circuit Court of the State of Hawai'i on August 12, 2011, which Defendant removed to this Court on October 26, 2011, on the basis of diversity jurisdiction. Plaintiff was employed as a registered nurse with Liberty Dialysis on November 10, 2008, and alleges that she was sexually harassed by a dialysis patient[1] in violation of Haw. Rev. Stat. § 378 (Counts I, V), and that she was retaliated against for complaining about the sexual harassment to her supervisor and for filing a charge with the Hawai'i Civil Rights Commission ("HCRC") (Count VIII). She also alleges claims for assault and battery (Counts II, V), negligent and intentional infliction of emotional distress ("NIED" and "IIED") (Counts III, IV, V), failure to investigate (Count V), "tort" (Count VI), tortious interference with prospective economic advantage ("TIPEA") (Count VII), and punitive damages (Count IX).

Plaintiff alleges that a patient committed sexual assault and battery, including touching the side of her breasts and subjecting her to a hostile work environment, the last incident occurring on November 19, 2008. [Complaint at ¶¶ 11-12.] Plaintiff claims that when she told her employer, it took no timely action to remedy the patient's misconduct, refused to

---

[1] The parties refer to the patient as "E" or "Patient E."

2

transfer Plaintiff to a different shift, and insisted that she continue to care for the patient.  [Id. at ¶¶ 13-17.]  Her physician placed her on medical leave due to emotional distress and she received psychological treatment.  [Id. at ¶ 25.]

I.   **Defendant's Motion**

Defendant moves for summary judgment on all the claims in Plaintiff's Complaint on the grounds that: (1) her sexual harassment claim fails because the conduct was not severe or pervasive; (2) Defendant took immediate action once it became aware of Plaintiff's complaint against the patient; (3) Plaintiff did not suffer any adverse employment action; and (4) her various tort claims fail as a matter of law.  [Mem. in Supp. of Motion at 1-2.]

A.   **Factual Background**

Defendant provides dialysis treatment to patients who generally require three treatments per week from two to five hours long, and states that it is subject to federally mandated regulations and the jurisdiction of the Centers for Medicare/Medicaid Services ("CMS").  It asserts that, because its patients "are fragile and if they do not receive dialysis treatment they will die," [id. at 2,] it cannot involuntarily transfer a patient from one of its facilities without satisfying mandatory patient requirements.  [Id. at 3.]

According to Defendant, Plaintiff met Patient E for the first time on November 10, 2008, when he was assigned as her patient, and that his normal treatment schedule was Monday, Wednesday, and Friday at 7:00 p.m.  November 10 was the only time Plaintiff cared for Patient E as her assigned patient.  While she was interviewing Plaintiff as part of the admissions process, Patient E grinned at her "maliciously" and said, "blanket, blanket" after Plaintiff had asked Patient E to bring a blanket to his treatment.  As she was starting Patient E's treatment, Patient E touched Plaintiff's covered arm three times, and she asked him not to.  During his treatment, Patient E also called to Plaintiff, "Aileen, Aileen, come here, why are you going away from me."  [Id. at 4-5 (citing Defendant's Concise Statement of Facts in Support ("CSOF"), Exh A. (Pl.'s 8/31/12 Dep. Tr.)).] Defendant states that, after his treatment, Plaintiff took Patient E to the lobby to show him the telephone when she saw him unlatch his belt while looking at her and grinning, and claims she believed Patient E meant he "wants to do an oral sex" and was "really scared."  [Id. at 5 (quoting Pl.'s 8/31/12 Dep. Tr. at 21).]

According to Defendant, on November 12, 2008, when Patient E came in for his next dialysis treatment, Plaintiff proceeded to complete his admissions process by taking his height measurement, even though she was the Charge Nurse that day, not

4

his assigned nurse, and she could have assigned the task of measuring Plaintiff's height to a another nurse or a Hemo Technician ("HT").  [Id.]

Plaintiff filed an adverse event report ("AER") regarding Patient E's behavior on November 10 and 12, 2011, which stated in its entirety:

> While I am taking [Patient E's] height he touched my shoulder and my back.  He touched me many times too when I admitted him 11/10/08.  I already warned him not to touch anybody but he did it again today.

[Id. at 6 (citing Exh. B at 3 (11/12/08 AER).]  According to Defendant, during her deposition on August 31, 2012, Plaintiff testified that Patient E touched her shoulder and the back of her breast.  Plaintiff finished the AER at 10:00 p.m. on November 12, 2011 and placed it in her supervisor, Clinical Manager Leonarda Natividad's in-tray at the nurses' station, located in an open area in the middle of the facility.  According to Natividad, the AER was sandwiched between other materials in her in-box, such as envelopes and magazines, and Natividad did not immediately see the AER.  [Id. (citing Exh. N, Natividad Tr. at 25, 27, 33-35, 171).]

On November 19, 2008 Natividad informed Social Worker Brent Auyong about Plaintiff's AER.  [Id. at 8 (citing Exh. P, Auyong Tr. 46-47).]  Auyong reached out to the Western Pacific Renal Network ("Network 17") – an agency contracted by the

government to work with CMS and local state departments of health

to oversee dialysis care and compliance with patients' rights –

and explained the substance of Plaintiff's AER.  Patient E had no

record of past behavioral issues, and Network 17 informed Auyong

that Liberty could not involuntarily discharge or transfer

Patient E, but directed Auyong to interview Patient E and to

consider a behavior contract so that, in the event of a

recurrence, it could proceed with an involuntary discharge or

transfer.  [Id. at 8-9 (citing Auyong Tr. 209-10, 213).]

Natividad and Auyong met with Patient E on November 19,

2008, and Patient E denied touching Plaintiff, but admitted to

loudly calling staff names.  According to Defendant, Natividad

credited Plaintiff's AER, rather than Patient E, and explained to

Patient E that he would need to sign an agreement indicating that

if he behaved inappropriately, he could be discharged from the

facility.  After the meeting with Patient E, Auyong contacted

Network 17 regarding Patient E's denial and was instructed to

enter into a behavioral contract with Patient E.  Network 17

further informed Auyong that in the event of an involuntary

discharge, Liberty must provide Patient E with thirty days'

notice.  [Id. at 9 (citing Auyong Tr. 136-37, 213-14, 228;

Natividad Tr. 80-82, 163-165).]

According to Defendant, due to a shortage of dialysis

facilities in Hawai'i, involuntary discharges are rare because

6

patients cannot be abandoned.  Rather, Defendant can only
immediately and involuntarily discharge a patient when the
patient is deemed an imminent danger.  After speaking with
Network 17, Auyong began drafting the behavioral contract
("Facility Agreement"), which Network 17 reviewed and approved.
[Id. at 10 (citing Natividad Tr. 88, 100-01; Auyong Tr. 21,
214-17, 229).]

On November 20, 2008, Natividad discussed Plaintiff's
AER during the facility's Continuous Quality Improvement ("CQI")
meeting, attended by Auyong, the morning Charge Nurse
(Belen Llanes), Natividad, the medical director, and the
dietician.  During the CQI meeting, Natividad instructed Llanes
that Patient E was not to be assigned to Plaintiff.  Plaintiff
did not attend the meeting, but was later told by Llanes that
they discussed her complaint of sexual harassment.  [Id. (citing
Pl.'s Tr. 39-40; Natividad Tr. 9, 182-83).]

On Patient E's next treatment day, November 21, 2008,
Natividad and Auyong met with Patient E, and he verbally agreed
not to touch Plaintiff and signed the Facility Agreement, in
which he agreed not to touch or make inappropriate comments to
any staff, person, patient, or visitor.  [Id. at 10-11 (citing
Natividad Tr. 102, 104; Exh. O (11/21/08 Facility Agreement);
Auyong Tr. 103, 217).]  Later that day, before Natividad had an
opportunity to update Plaintiff on the status of the

7

investigation into her AER, Natividad saw that the patient schedule, which Natividad had the unit clerk post the week before, had been changed in a manner that potentially resulted in overtime for one of the HTs.  When Natividad reviewed the patient schedule, she did not notice that it involved Patient E's schedule or connect it with Plaintiff's AER, and, because she had not been consulted about the change, she called the evening Charge Nurse, Nancy Aglibot, and asked why the schedule had been changed.  [Id. at 11 (citing Natividad Tr. 57-58, 180; Aglibot Tr. 85; De Gula Tr. 71).]

Aglibot responded by directing Natividad to Plaintiff. Natividad then asked Plaintiff about the changes she made to the patient assignments.  Plaintiff responded by asking Natividad why she had to take care of Patient E when he sexually harassed her. [Id. (citing Natividad Tr. 57-58; Pl.'s Tr. 86-87).]  Natividad explained to Plaintiff that she spoke to Patient E about his behavior and that Patient E entered into a Facility Agreement in which he agreed he would not act inappropriately.  Defendant asserts that, during the November 21, 2008 conversation, Plaintiff did not tell Natividad that Patient E touched her breast.  Natividad left the patient assignments as revised by Plaintiff, and Plaintiff did not treat Patient E on November 21, 2008.  [Id. at 11-12 (citing Natividad Tr. 73-74, 198; Aglibot Tr. 104; Pl.'s Tr. 37, 88).]

On November 24, 2008, Plaintiff made a written complaint with the Hawai'i Nurses Association ("HNA").  That same day, she asked Natividad if she could change to the morning shift to avoid Patient E.  According to Plaintiff, Natividad told Plaintiff she could not switch her to the first shift permanently because a traveling nurse already had that shift, but offered to move Patient E to the morning shift.  There were no morning treatments available, however, and Natividad switched Patient E to a 12:00 p.m. to 3:00 p.m. treatment time, resulting in a half-hour overlap in which Plaintiff and Patient E were in the facility at the same time, while Patient E completed his treatment and Plaintiff began her shift at 2:30 p.m.  [Id. at 12 (citing Pl.'s Tr. 28, 37-38, 64, 79).]

On November 25, 2008, Plaintiff's union representative informed Plaintiff that he spoke with Defendant and that Patient E would no longer be her patient.  On November 25, Plaintiff went out on a medical leave of absence and did not return to work at Liberty Dialysis.  Plaintiff's union did not file a grievance. On December 11, 2008, Plaintiff submitted a work injury report and filed a Workers' Compensation ("WC") claim on January 8, 2009.  [Id. at 13 (citing Pl.'s Tr. 26-27, 42-43, 71, 90).]

On December 10, 2008, HT Digna De Gula reported to Natividad that Patient E, while hooked up to the dialysis machine, used his foot to touch De Gula's buttock.  De Gula

9

reported the incident within minutes by hand-delivering an AER to Natividad.  Almost immediately after being handed the AER, Natividad and Auyong confronted Patient E, who claimed he was only trying to get De Gula's attention.  [Id. at 13-14 (citing Natividad Tr. 109-10; De Gula Tr. 30-31, 44-45, 96-97, 105-06, 109).]

Network 17 informed Auyong that it would be difficult to involuntarily discharge Patient E because of the limited number of dialysis clinics in Hawai'i and it did not want him to be abandoned.  With Network 17's approval, Defendant asked Patient E to transfer out of the Leeward facility, and he agreed. [Id. at 14 (citing De Gula Tr. 97, 107-08. Natividad Tr. 142; Auyong Tr. 223-27, 230).]  Patient E transferred to the Waipahu facility, and passed away on July 19, 2010.  [Id. (citing Natividad Decl. at ¶ 3; Whaley Tr. 150; Pl.'s Tr. 117).]

On July 27, 2009, Plaintiff sent Maryann Whaley, Human Resources Director, a letter claiming she had requested an "accommodation no less than three times" for the alleged sexual harassment, but that Liberty "refused these requests."  [Id.; Defendant's CSOF, Exh. I (7/27/09 Letter); Pl.'s Tr. 97.] Plaintiff testified during her deposition that the three accommodation requests referenced in her July 27 letter were (1) an April 6, 2009 bid to transfer to the Waipahu Clinic, (2) a May 8, 2009 conversation with the Waipahu facility Clinical

10

Manager Emilyn Ramones, and (3) a May 26, 2009 letter to Whaley. [<u>Id</u>. at 14-15 (citing Pl.'s Tr. 98, 105).]  According to Defendant, despite having withdrawn her transfer bid and her continuing "off duty" status, approximately one month before she was released to modified duty, Plaintiff wrote to Whaley to "reiterate" her alleged transfer request on May 26, 2009.  At that time, Defendant had not awarded Plaintiff a transfer because she had withdrawn her bid.  [<u>Id.</u> at 15-16 (citing Whaley Tr. 151, 159; Auyong Tr. 229).]

Plaintiff filed a WC claim relating to her interactions with Patient E, and a hearing was held before Hawaii's Department of Labor and Industrial Relations, Disability Compensation Division ("DCD") on June 23, 2009.  On July 20, 2009, the DCD concluded that Plaintiff did not sustain an injury arising out of and in the course of her employment, and denied Plaintiff's WC claim ("7/20/09 Decision").  [<u>Id.</u> at 16-17 (citing Exh. C (6/30/11 Settlement Agreement); Exh. D (7/20/09 Decision); Pl.'s Tr. 58-59).]  Defendant notes that by September 2009, Plaintiff stopped receiving psychiatric treatment because she did not believe she needed it any longer.  [<u>Id.</u> at 18 (citing Pl.'s Tr. 44-45, 138).]  On or about September 21, 2009, Plaintiff moved to California, where she had a job with another employer, where she continues to be employed.  [<u>Id.</u> at 17.]

B.   <u>**Discrimination and Harassment (Counts I and V)**</u>

Defendant argues that Plaintiff cannot maintain claims for sex discrimination or harassment because Patient E's behavior was neither severe nor pervasive.  It argues that courts have consistently dismissed harassment claims based upon much more egregious behavior than that alleged by Plaintiff.  [<u>Id.</u> at 20-21 (citing cases).]  Next, Defendant argues that, once it became aware of Plaintiff's AER, it took immediate remedial action.  Last, Defendant argues that Plaintiff's discrimination and harassment claims are barred by res judicata because the same issues were adjudicated in her WC claim before the DCD.

C.   <u>**Retaliation (Count VIII)**</u>

Defendant argues that Plaintiff's retaliation claim fails because there is no direct evidence of retaliation and Plaintiff cannot make a prima facia case because she did not suffer an adverse employment action.  Defendant asserts that none of the following allegations amount to an adverse employment action: (1) being "forced" to provide care to Patient E; (2) "chastising" her for changing the patient assignments on November 21; and (3) Defendant's decision not to discharge Patient E from the Waipahu facility so she could work there.  [<u>Id.</u> at 28-29.]  It further argues that there is no causal link between any adverse employment action and Plaintiff's protected activity.  Defendant claims it set forth legitimate, non-

12

retaliatory reasons for its conduct, and that Plaintiff cannot establish pretext.  [<u>Id.</u> at 31-32.]

### D.   <u>Assault and Battery (Counts II, V)</u>

Defendant argues that it cannot be liable for assault and battery, and that Plaintiff's Complaint is devoid of any agency-type theories of liability holding it liable for the acts of Patient E, a customer (not an employee or agent of any kind), and non-party to this action.  [<u>Id.</u> at 33.]

### E.   <u>Negligence Claims (Counts III, V)</u>

Defendant next argues that Plaintiff's negligence claims are barred by worker's compensation laws.  [<u>Id.</u> at 34.]

### F.   <u>Tort Claims (Counts III, IV, V, VI, and VII)</u>

Defendant also argues that Counts III and V, along with Counts IV, VI, and VII, are all based in tort and are preempted by Plaintiff's statutory discrimination claims.  Further, to the extent Plaintiff's "tort" claim (Count VI) is a claim for prima facie tort, Defendant argues that such a claim is not recognized in Hawai'i and should be dismissed on that additional basis. [<u>Id.</u> at 35 (citing <u>Metzer Contracting Co. LLC et al. v. Elle Stephens, et al.</u>, Civ. No. 07-00261 LEK, 2009 U.S. Dist. LEXIS 32956 (D. Hawai'i Apr. 17, 2009)).]

### G.   <u>Intentional Infliction of Emotional Distress (Count IV)</u>

Defendant urges dismissal of Plaintiff's IIED claim because the conduct identified, even if true, does not amount to

extreme or outrageous conduct.  [Id. at 35-36.]

### H.   Tortious Interference With Prospective Economic Advantage (Count VII)

Defendant argues that Plaintiff's TIPEA claim can only be brought against a third party who is not party to the relationship that has suffered interference.  Defendant states that this claim fails because Plaintiff has not alleged any prospective economic advantage with any third party in her Complaint.  [Id. at 37-38.]

### I.   Punitive Damages (Count IX)

Defendant argues that Plaintiff is not entitled to punitive damages because its conduct was not egregious or outrageous, and that it took reasonable steps to resolve Plaintiff's complaint regarding Patient E.  [Id. at 38-39.]

## II.  Plaintiff's Memorandum in Opposition

Plaintiff argues in her opposition that there are genuine issues of material fact which preclude summary judgment. [Mem. in Opp. at 1-2.]  Plaintiff argues that, under Hawai'i law, a single severe act can be enough to establish a harassment claim, and that whether harassing conduct was "severe and pervasive" under state law is distinct from federal law analysis. [Id. at 2-3 (citing Arquero v. Hilton Hawaiian Village, LLC, 104 Hawai'i 423, 91 P.3d 505 (2004)).]

She notes that an employer may be liable for non-

employee harassment of its employees if the employer knew or should have been aware of the harassment and failed to take appropriate corrective action. [Id. at 3 (citing Folkerson v. Circus Circus Enters., Inc., 107 F.3d 756 (9th Cir. 1997).]

Plaintiff argues that Natividad acknowledged that Plaintiff had been harassed, that the workplace was not safe for her, and that Natividad had been negligent in handling Plaintiff's sexual harassment claim. [Id. at 4.] Plaintiff asserts that Defendant did not take immediate corrective action, and should have interviewed her the day following Plaintiff's submission of her AER. She also argues that Defendant should have provided security to protect her from Patient E, and assigned her to a morning shift when Patient E would not have been at the facility. [Id. at 6-7.]

She maintains that her sexual harassment claim is not barred by res judicata, and that Defendant's argument to the contrary is a breach of the parties' settlement agreement. [Id. at 9.]

With respect to her retaliation claim, Plaintiff argues that she was excluded from the monthly CQI meeting on November 20, 2008, held by Natividad to discuss her complaints, and that exclusion from meetings is a sufficient adverse employment action. She further argues that Natividad was hostile and intimidating toward her, which also constituted retaliation.

15

[Id. at 10-11.]

As to her assault and battery claims, Plaintiff argues that Defendant had the authority, power, and duty to control Patient E's conduct to Plaintiff, and that Defendant knew or should have known of the assaults.  Plaintiff argues that Defendant owed her a duty to protect her from a customer's assaults.  [Id. at 11.]

She argues that her state tort claims are not barred by the worker's compensation exclusivity provision, and that claims for sexual harassment, sexual assault, and infliction of emotional distress are not barred by Haw. Rev. Stat. § 386-5. She also argues that whether Defendant's conduct was sufficiently outrageous is a question of fact for the jury.  [Id. at 12-13.]

Plaintiff concedes that Defendant is entitled to summary judgment on her TIPEA claim (Count VII) and that she cannot state a stand-alone claim for punitive damages (Count IX). She maintains that she is entitled to punitive damages as a remedy.  [Id. at 14.]

III. **Defendant's Reply**

In its reply, Defendant maintains that Plaintiff cannot establish a prima facie case of discrimination or retaliation. Defendant acknowledges that it had a duty to prevent further misconduct by Patient E, but argues that it fulfilled this duty by accepting as true Plaintiff's allegations against Patient E;

confronting Patient E with the allegations; and requiring Patient E to agree that if he engaged in further misconduct he would be discharged from the facility or transferred. [Reply at 1-2.]

It argues that the alleged harassment Plaintiff reported consists of isolated events: (1) on 11/10/08, Patient E touched Plaintiff "many times" (three times on the arm over clothing); and (2) on 11/12/08 Patient E touched Plaintiff's shoulder and back. Defendant contends that, even assuming the alleged conduct rose to the level of sexual harassment, it is shielded from liability because it performed an adequate investigation and took appropriate remedial steps to end the harassment. It states that an employer need not act instantaneously, but need only act in a reasonably prompt manner to respond to the employee's complaint. [Id. at 10-11.]

Defendant notes that Plaintiff's opposition does not address its arguments regarding her claims for assault and battery against a corporation (Counts II, V), or that her tort claims are preempted by statute (Counts III, IV, V, VI, and VII). [Id. at 18-19.] It argues that Plaintiff's NIED (Count III) and IIED (Count IV) claims fail because she presents no evidence of any physical injury, or specific facts showing outrageous conduct. [Id. at 19.]

### STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a

party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I.   Counts I and V - Sex Discrimination

In construing discrimination claims brought under Haw. Rev. Stat. § 378-2, Hawai'i courts look "to the interpretations of analogous federal laws by the federal courts for guidance". Shoppe v. Gucci Am., 94 Hawai'i 368, 377, 14 P.3d 1049, 1058 (2000) (citing Furukawa v. Honolulu Zoological Soc'y, 85 Hawai'i 7, 13, 936 P.2d 643, 649 (1997)).  The Court notes that the Hawai'i Supreme Court has held that, in interpreting § 378-2, federal case law interpreting Title VII is persuasive, but not controlling.  Arquero v. Hilton Hawaiian Village LLC, 104 Hawai'i 423, 429-30, 91 P.3d 505, 511-12 (2004).

In order to establish a sexual harassment claim pursuant to Haw. Rev. Stat. § 378-2, a plaintiff must show that:

> (1) he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was severe or pervasive; (4) the conduct had the purpose or effect of either: (a) unreasonably interfering  with the claimant's work performance, or (b) creating an intimidating, hostile, or offensive work environment; (5) the claimant actually perceived the conduct as having such purpose or effect; and (6) the claimant's perception was objectively reasonable to a person of the claimant's gender in the same position as the claimant.

Nelson v. Univ. of Haw., 97 Hawai'i 376, 390, 38 P.3d 95, 109 (2001).

With regard to the third element of the claim, the required showing of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. "For example, a single severe act can be enough to establish a claim, and multiple incidents, each of which may not be severe when considered individually, can be enough to establish a claim when evaluated collectively." Arquero, 104 Hawai'i at 428, 91 P.3d at 510 (quoting Nelson, 97 Hawai'i at 390-91, 38 P.3d at 109-10 (2000)).

Here, Plaintiff reported to Defendant in the AER that on two occasions Patient E "touched my shoulder and my back. He touched me many times too when I admitted him 11/10/08. I already warned him not to touch anybody but he did it again today." [Def.'s Exh. B at 3 (11/12/08 AER).] She did not inform Defendant that Patient E touched the back of her breast, made a crude gesture with his belt buckle, or verbally harassed her, as alleged in her Complaint and at her deposition. "[A]n employer cannot be held liable for misconduct of which it is unaware." Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001). With respect to the conduct that she did report, it does not appear to rise to the severe or pervasive level required to maintain a claim under Haw. Rev. Stat. ¶ 378-2.

19

In evaluating a sexual harassment claim on summary judgment, the Court must "look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." Nelson, 97 Hawai'i at 391, 38 P.3d at 110 (quotations omitted). The allegations that Patient E touched her shoulder and arm do not appear to amount to sexual assault, as was the case in Arquero. Patient E's conduct, while offensive, does not appear to have been objectively severe or pervasive enough to unreasonably interfere with Plaintiff's work performance or create an intimidating, hostile, or offensive work environment under the law. See Arquero, 104 Hawai'i at 428-432, 91 P.3d at 510-514. Moreover, even if the conduct was sufficiently severe or pervasive, the Court concludes that Defendant took appropriate remedial action.

Under Hawai'i law,

> [a]n employer may be responsible for the acts of non-employees, with respect to sexual harassment of employees at the workplace, where the employer knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases, the [HCRC] will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of the non-employees.

Haw. Admin. R. § 12-46-109(e).

Here, Defendant became aware of Plaintiff's November 12, 2008 AER on or around November 17, 2008, when

Natividad read and processed Plaintiff's report.  The Court notes that Defendant credited Plaintiff's account, rather than interviewing her immediately.  Thereafter, Auyong contacted Network 17, met with Patient E on November 19, and told him he would need to sign a behavioral contract.  On November 20, 2008, Natividad directed Llenes not to assign Patient E to Plaintiff. On November 21, 2008, Defendant entered into the Facility Agreement with Patient E in which he agreed that if he engaged in inappropriate behavior, he would be discharged or transferred. On November 24, 2008, Defendant agreed with HNA not to assign Plaintiff to Patient E, and switched Patient E's schedule so that, at most, Plaintiff and Patient E would be in the same facility for half-an-hour on days their schedules overlapped. There are no allegations that Plaintiff was forced to care for or come into direct contact with Patient E after Defendant became aware of Patient E's conduct toward Plaintiff.

Even viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant's response was reasonable and adequate under the circumstances on this case. See Arquero, 104 Hawai'i at 433, 91 P.3d at 515 (recognizing "that there may be situations in which a court could conclude that an employer's response was sufficient as a matter of law"). Moreover, in this particular context, Defendant's response was reasonable in light of its relationships with its dialysis

21

patient and Network 17, as well as its employees.  See id. at 433 n.14, 91 P.3d at 515 n.14 (stating that courts "must balance the victim's rights, the employer's rights, and the alleged harasser's rights.  If our rule were to call for excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination." (quoting Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 677 (10th Cir. 1998))).  In light of the foregoing, the Court GRANTS the Motion as to Plaintiff's sex discrimination claims based on sexual harassment.[2]

## II.  Retaliation (Count VIII)

> To sustain her retaliation claim under federal and state law, Plaintiff must show by preponderance of the evidence that (1) she was involved in a protected activity opposing an unlawful employment practice; (2) that [defendant] took an adverse personnel action against her; and (3) there is a causal link between the protected activity and the adverse action. Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006); McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004); Vasquez v. County of L.A., 349 F.3d 636, 646 (9th Cir. 2003); Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 426, 32 P.3d 52, 70 (2001).  Plaintiff's failure to offer evidence establishing one of these elements will be fatal to her claim.  See Lyons, 307 F.3d at 1113.

Finazzo v. Hawaiian Airlines, Civil No. 05-00524 JMS/LEK, 2007 WL 2668711, at *14 (D. Hawai'i Sept. 7, 2007).

---

[2] The Court does not reach Defendant's argument that it is entitled to summary judgment on these claims on the basis of res judicata.

Here, Plaintiff did not suffer any sufficiently adverse
employment action for reporting Patient E's offensive conduct.
Plaintiff was not assigned by Defendant to care for Patient E
after she submitted her AER, and she was allowed to change her
schedule despite Natividad's concerns about employees earning
overtime.  Plaintiff withdrew her bid to be transferred to the
Waipahu clinic, and Defendant attempted to keep her and Patient E
from coming into further contact.  To the extent she alleges that
she was excluded from a scheduled monthly CQI meeting on
November 20, 2008, she testified that the meeting was a monthly
meeting with the social worker, charge nurse, clinical manager,
doctor, and dietician to discussion current issues and
improvement of care.  [Pl.'s Tr. 39-40.]  The evidence does not
show that she attended such meetings previously, or that she was
excluded because she complained about Patient E's conduct.  None
of the conduct alleged materially altered the terms and
conditions of Plaintiff's employment.  The Motion is GRANTED as
to Plaintiff's retaliation claim.

## III. <u>Assault and Battery (Counts II, V)</u>

A person commits the common law tort of
assault if he or she acts with intent to cause
another a nonconsensual harmful or offensive
contact or apprehension thereof, and the other
person apprehends imminent contact.  <u>Garcia v.
United States</u>, 826 F.2d 806, 810 n. 9 (9th Cir.
1987); <u>Burrows v. Hawaiian Trust Co.</u>, 49 Haw. 351,
360, 417 P.2d 816, 821 (1966) ("Consent is a
defense to assault and battery cases as well as to
others, unless the consent is against the policy

of the law"); Restatement (Second) of Torts § 21 (1965) ("An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension").

A person commits the common law tort of battery if he or she acts with intent to cause a nonconsensual harmful or offensive contact, or apprehension thereof, and the contact occurs. Garcia, 826 F.2d at 810 n. 9; Ozaki v. Association of Apartment Owners of Discovery Bay, 87 Hawai'i 273, 289, 954 P.2d 652, 668 (Ct. App.) (stating that a battery is an unlawful touching of another person without his or her consent), aff'd in part and rev'd in part on other grounds, 87 Hawai'i 265, 954 P.2d 644 (1998); Burrows, 49 Haw. at 360, 417 P.2d at 821; Restatement (Second) of Torts § 18 (1965) ("An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results").

Mukaida v. Haw., 159 F. Supp. 2d 1211, 1223 (D. Hawai'i 2001).

Plaintiff does not contest that Defendant is a corporate entity and cannot be liable for intentional torts committed by a non-employee.  See Holloway v. Ameristar Casino St. Charles, Inc., No. 4:07 CV 218 DDN, 2010 WL 148441, at * 7 (E.D. Mo. Jan. 12, 2010) ("'A corporation, on its own, cannot commit an assault or battery.'  As a result, the 'sole manner in which a [corporation] could be held liable for an assault and battery would be through some agent or employee.'" (quoting Presley v. Cent. Terminal Co., 142 S.W.2d 799, 803 (Mo. Ct. App.

24

1940)).  It is undisputed that Patient E was not Defendant's
agent or employee.  Plaintiff argues that Defendant owed her a
duty to protect her from its customer's assaults [Mem. in Opp. at
11,] but such a claim sounds in negligence, and Plaintiff offers
no legal authority for maintaining her intentional tort claims
against Defendant here.  The Motion is GRANTED as to Plaintiff's
claims for assault and battery.

**IV.   <u>Negligence (Counts III and V)</u>**

      Defendant argues that Plaintiff's claims sounding in
negligence are barred by workers' compensation law, which states:

> The rights and remedies herein granted to an
> employee . . . on account of a work injury
> suffered by the employee shall exclude all other
> liability of the employer to the employee . . . on
> account of the injury, except for sexual
> harassment or sexual assault and infliction of
> emotional distress or invasion of privacy related
> thereto, in which case a civil action may also be
> brought.

Haw. Rev. Stat. § 386-5.  Generally, § 386-5 "serves to bar a
civil action for physical and emotional damages resulting from
work-related injuries and accidents."  <u>Furukawa v. Honolulu
Zoological Society</u>, 85 Hawai'i 7, 16–19, 936 P.2d 643, 652–55
(1997).

      In keeping with the statute's plain language, courts
have enforced the exclusivity provision to bar common law
negligence claims for both physical and psychic injuries
resulting from workplace conduct.  <u>See, e.g.</u>, <u>Antoku v. Hawaiian</u>

Elec. Co., 266 F. Supp. 2d 1233, 1236-37 (D. Hawai'i 2003)

(holding that § 386-5 bars claims for negligent supervision,

negligent training, failure to prevent discrimination, failure to

investigate and remedy discrimination, and negligence, in

employee's discrimination suit).  To the extent Plaintiff's

claims sound in negligence, they are barred by Haw. Rev. Stat.

§ 386-5.

     The Court notes that claims for NIED arising out of

sexual harassment or sexual assault are not barred under § 386-5.

See, e.g., Kamaka v. Goodsill Anderson Quinn & Stifel, 117

Hawai'i 92, 109, 176 P.3d 91, 108 (2008) ("[A] claim for

emotional distress, that does not arise out of sexual harassment

or sexual assault . . . is, pursuant to HRS § 386-5, barred.");

Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1263 (D.

Hawai'i 2003) ("Under Hawaii law, claims for negligent infliction

of emotional distress are barred by Haw. Rev. Stat. § 386-5,

unless the claims relate to sexual harassment or assault.").

     This district court, however, has recognized that not

all NIED claims in cases involving allegations of sexual

harassment fall within the statute's exception.  In Clemmons v.

Hawaii Medical Services Ass'n, 273 F.R.D. 653, 658-59 (D. Hawai'i

2011), Chief United States District Judge Susan Oki Mollway

explained as follows:

          Although section 386-5 does contain a limited
          exception allowing civil claims for "sexual

26

harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto," that exception is inapplicable here. . . .  In construing the sexual harassment exception, this court's duty is to ascertain the legislature's intent, "which is to be obtained primarily from the language contained in the statute itself." <u>See</u> <u>Nelson</u>, 97 Hawai'i at 393, 38 P.3d at 112 (quoting <u>Korsak v. Hawaii Permanente Med. Group</u>, 94 Hawai'i 297, 303, 12 P.3d 1238, 1244 (2000)). . . .  [Plaintiff] is not basing his negligence claim on a *respondeat superior* theory.  Rather than seeking to hold his employer liable for [co-worker's] alleged conduct, [plaintiff] claims breaches of independent duties to supervise and train employees and to handle investigations of sexual harassment properly.  **As such claims are clearly separable from actual sexual harassment, they fall far outside the plain language of the sexual harassment exception to the exclusivity provision.**  <u>Cf.</u> <u>Nelson</u>, 97 Hawai'i at 395, 38 P.3d at 114 (explaining that a negligent infliction of emotional distress cause of action "related to" a sexual harassment claim because both were "premised on the same conduct").

. . . .

As discussed above, this judge reads the plain language of the sexual harassment provision as exempting sexual harassment itself from chapter 386's exclusivity, not as exempting the distinguishable situation involving negligent training about sexual harassment.  Moreover, the legislative history of the 1992 amendment that added the sexual harassment language to section 386-5 does not reflect an intent by the legislature to permit all claims "intertwined" with sexual harassment.  <u>See</u> <u>Black [v. City & Cnty. of Honolulu</u>, 112 F. Supp. 2d 1041,] 1048 (D. Hawai'i 2000)].

(Emphasis added.)  <u>Cf.</u> <u>Black v. City & Cnty. of Honolulu</u>, 112 F. Supp. 2d 1041, 1048 (D. Hawai'i 2000) ("Where the plaintiff asserts that her employer's negligence **resulted in** sexual

harassment, the negligence is not actionable but for the intentional harassment.  Such negligence claims are so intertwined with sexual harassment that they must be considered a species of the injury for which the legislature carved out an exception in the 1992 amendment.  They are therefore exempt from the bar of the exclusivity provision." (emphasis added)).

In Clemmons, the plaintiff alleged defendants owed him a duty to prevent other employees from harming him, and that those defendants breached their duty of care by failing to train co-workers to refrain from discriminating against him, failing to train and supervise co-workers, and failing to adequately investigate sexual harassment complaints.  Id. at 657-58.  Here, as in Clemmons, Plaintiff claims breaches of independent duties to supervise and train employees and to handle investigations of sexual harassment properly.  In Plaintiff's Count III NIED claim, she alleges that Defendant's negligent misconduct in the handling of her complaints of sexual harassment caused her "to become unable to adequately cope with the mental stress caused by the circumstances of the case." [Complaint at ¶¶ 37-38.]  This Court agrees with the reasoning in Clemmons, and concludes that here, as in Clemmons, Plaintiff's NIED claims "are clearly separable from actual sexual harassment, they fall far outside the plain language of the sexual harassment exception to the exclusivity provision." Clemmons, 273 F.R.D. at 658.  The Court concludes

that Plaintiff's NIED claims are barred by Haw. Rev. Stat. §
386-5.  The Motion is GRANTED as to Plaintiff's negligence
claims.

## V.   <u>Tort Claims (Counts VI and VII)</u>

Plaintiff's "tort" claim (Count VI) alleges that
Defendant unreasonably failed to provide Plaintiff with a non-
hostile work environment, and was otherwise unreasonable in its
care and treatment of Plaintiff during her employment.
[Complaint at ¶¶ 46-51.]  In her opposition, Plaintiff does not
clarify the basis for this count, or explain how it differs from
her other common law claims.  To the extent Plaintiff seeks to
allege a prima facie tort claim, such a claim is not recognized
in Hawai'i under facts similar to these.  <u>See Metzer Contracting
Co., LLC v. Stephens</u>, Civ. No. 07-00261 LEK, 2009 WL 1046666 (D.
Hawai'i Apr. 17, 2009).  The Motion is GRANTED as to Count VI.

Plaintiff acknowledges that her TIPEA claim (Count VII)
does not allege interference with any prospective economic
advantage with a third party, and that Defendant cannot interfere
with its own relationship with Plaintiff.  The Motion is GRANTED
as to Count VII.

## VI.  <u>Intentional Infliction of Emotional Distress (Count IV)</u>

Plaintiff alleges that Defendant's misconduct "in
condoning sexual harassment, assaults and discrimination against
Plaintiff because of her sex constitutes outrageous, intentional

conduct which caused [her] physical and psychological injury and severe emotional distress and anxiety." [Complaint ¶ 40.]

"The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Haw., 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts).

> In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the Restatement (Second) of Torts states:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc., 76 Hawai'i 454, 465 n.12, 879 P.2d 1037, 1048 n.12 (1994) (quoting Restatement (Second) of Torts § 46, cmt. d. (1965)).  "The question whether

the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121, 1127 (D. Hawai'i 2004) (citing Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000)).

> Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context. See Ross v. Stouffer Hotel Co., 76 Hawai'i 454, 879 P.2d 1037, 1048 (Haw. 1994) (granting summary judgment for employer on employee's IIED claim); Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii Supreme Court recently has set an extremely high, standard for such a claim in the employment context[.]").

Ho-Ching v. City & Cnty. of Honolulu, CV. No. 07-00237 DAE-KSC, 2009 WL 1227871, at *12 (D. Hawai'i Apr. 29, 2009).

Even when viewed in the light most favorable to Plaintiff, the evidence does not demonstrate conduct that was outrageous.  Plaintiff's allegations that Defendant did not do enough to protect her from Patient E and failed to properly investigate her complaints of sexual harassment do not amount to behavior that is arguably beyond all bounds of decency.  Cf. Weaver v. A-American Storage Mgmt. Co., Civil No. 10-00600 JMS-KSC, 2011 WL 97651, at *8 (D. Hawai'i Jan. 12, 2011) ("Intentionally discriminating against an employee based on race, terminating him after only a few weeks in violation of federal

and state law, evicting him, taking his residence and car, forcing him to remove his belongings to the street, *and* later giving false information to prospective employers could constitute 'outrageous' conduct for purposes of IIED."). The Motion is GRANTED as to Plaintiff's IIED claim.

## VII. <u>Punitive Damages</u>

The Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims, and, because there are no remaining claims, the Court does not reach the issue of punitive damages.

<u>CONCLUSION</u>

On the basis of the foregoing, Defendant Liberty Dialysis – Hawaii, LLC's Motion for Summary Judgment, filed on September 27, 2012, is HEREBY GRANTED. The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 11, 2013.



        /S/ Leslie E. Kobayashi

        Leslie E. Kobayashi
        United States District Judge

**AILEEN MARIANO V. LIBERTY DIALYSIS; CIVIL NO. 11-00652 LEK-RLP; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**